[Crim. No. 221.    Third Appellate District.—May 16, 1913.]

In the Matter of the Application of ALBERT J. ANIXTER, for a Writ of Habeas Corpus.

INTOXICATING LIQUORS—ORDINANCE FORBIDDING SOLICITATION OF ORDERS FOR LIQUOR.—An ordinance of a town forbidding the soliciting or taking of orders for the delivery of intoxicating liquors does not conflict with the "Wyllie Local Option Law" (Stats. 1911, p. 599).

ID.—WYLLIE LOCAL OPTION LAW—PURPOSE AND EFFECT.—While the Wyllie Local Option Law constitutes a general law, in that it applies to the whole state, it does not directly, or *ipso facto,* operate to prohibit or restrict the sale by retail of such liquors in the state, nor

to interfere with the right, expressly granted to them by the constitution, of local legislative boards to regulate or prohibit such sale of such liquors within the sphere of their respective jurisdictions, until the provisions of such general law have been invoked and put into practical operation by the electors themselves within such jurisdictions.

ID.—POWER OF TOWN TO REGULATE OR SUPPRESS LIQUOR TRAFFIC.—A town which has not invoked the provisions of the Wyllie law has. plenary power to regulate or suppress, within its limits, the retail traffic in alcoholic liquors, and to adopt such measures as will effectually attain either end.

ID.—POWER OF STATE OR MUNICIPALITIES OVER LIQUOR TRAFFIC.—There is absolutely no restriction upon the right of a state, in the exercise of its powers of police, to deal with the business of selling intoxicating liquors by retail in any manner that it deems fit or proper. A state, or its municipalities, may prohibit the traffic in such liquors altogether, or, permitting the traffic to be carried on, may impose such conditions upon its existence as it pleases.

ID.—ORDINANCE FORBIDDING SOLICITATION OF ORDERS FOR LIQUOR.—A town ordinance prohibiting the soliciting or taking of orders for the delivery of intoxicating liquors is not invalid because there is no other ordinance directly and expressly forbidding the carrying on of the liquor traffic within the town.

ID.—ORDERS FOR DELIVERY OF LIQUOR OUTSIDE OF TOWN.—Such ordinance is not unreasonable because prohibiting the taking of orders or the making of agreements within the town for deliveries of liquors without its limits.

ID.—ORDINANCE INVALID IN PART—REJECTION OF INVALID PORTION.—A portion of the ordinance, invalid because it forbids the taking of orders for "liquor of any kind whatever," may be disregarded under the rule that when the part of a law or ordinance which is invalid is distinctly separable from the remainder, the latter may stand and the former be rejected.

ID.—INTERSTATE COMMERCE—POWER OF STATE TO REGULATE LIQUOR TRAFFIC.—A state may, in the exercise of its police powers, and without offending the commerce clause of the federal constitution, regulate or control the traffic in intoxicating liquors, within its own borders, to the extent either of regulating or altogether preventing the business of soliciting proposals in such state for the purchase of such liquors, which proposals are to be consummated outside of the state, and the liquors to which such proposals relate are also situated outside the state.

ID.—RESTRAINT OF TRADE—ORDINANCE FORBIDDING LIQUOR TRAFFIC.—A town ordinance prohibiting the taking of orders or the making of agreements for the sale and delivery of intoxicating liquors is not invalid as in restraint of trade.

APPLICATION for a Writ of Habeas Corpus to obtain release from custody under a conviction for violating a liquor ordinance of the town of Winters. ·

The facts are stated in the opinion of the court.

M. S. Wharhaftig, for Petitioner.

A. G. Baily, District Attorney, Yolo County, for Respondent.

HART, J.—The petitioner, on the ninth day of April, 1913, having been found guilty by a jury, in the recorder's court of the town of Winters, in Yolo County, of the violation of the provisions of ordinance No. 110 of said town, was sentenced by the recorder to pay a fine of $475, or, on failure to pay said fine, to suffer imprisonment in the city jail of said town for the period of sixty days. Having defaulted in the payment of the fine so imposed, the petitioner was ordered into the custody of the marshal of said town and by said officer incarcerated in the city jail, where he is by that official now restrained of his liberty.

Claiming that his conviction of the offense charged against him and the restraint of his liberty therefor are void because of the asserted invalidity of the ordinance under which such conviction and resultant restraint were brought about, the petitioner asks for his release at the hands of this court from such alleged unlawful custody and restraint through the writ of *habeas corpus*.

Section 1 of the ordinance, for the infraction of whose provisions the petitioner was prosecuted and convicted, provides that "it shall be, and hereby is made unlawful for any person, corporation, firm, company, association, or club, as principal, agent, employee, or otherwise, within the corporate limits of the said town of Winters, to solicit orders, take orders, or make agreements for the sale or delivery of any intoxicating liquors, or liquor of any kind whatever, or in any quantity or quantities."

Section 2 prescribes the penalty for the violation of the provisions of the ordinance, and section 3 expressly exempts from the operation of the ordinance any registered pharmacist, who holds a license from the authorities of said town for the transaction therein of the business of a pharmacist, and who

holds a permit from such authorities to sell intoxicating liquors in said town for medicinal purposes.

The petitioner insists that said ordinance is void for these reasons, viz.: 1. That it is repugnant to section 11 of article XI of the constitution, in that it conflicts with the provisions of a general law of this state; 2. That it is unreasonable; 3. That its provisions operate in restraint of trade.

1. The provisions of the constitution (sec. 11 of art. XI) with which it is contended that the ordinance in question is in conflict reads: "Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary, and other regulations *as are not in, conflict with general laws.*"

The contention is that the ordinance conflicts with the provisions of the act of the legislature of 1911 known as the "Wyllie Local Option Law" (Stats. 1911, p. 599). But there is no such conflict.

The so called Wyllie law was not designed by the legislature to have the effect of interfering with the constitutional right of local communities, through their duly constituted authorities, to handle for themselves the retail liquor business, except in those cases where such communities adopt the provisions of said law for their guidance upon that question. That law, it is very true, applies to the whole state, and it is, therefore, a general law in the truest sense, and would have to be so to be constitutional, but its purpose is not, and nowhere can there be found in any of its provisions any language disclosing an intention, to prohibit, *ex proprio vigore,* the retail sale of intoxicating liquors throughout the state or in any subdivision thereof. It merely constitutes and involves a general scheme whereby the electors of certain designated territories in the state may determine for themselves whether, within such territories, the sale of such liquor may or may not be licensed and carried on. The legislation involved in the act merely amounts, in practical effect, not to a delegation of legislative authority (*Ex parte Beck,* 162 Cal. 701, [124 Pac. 543]), but to a grant of power to the electors themselves, as by the constitution (art. XI, sec. 11) power to deal with the same and other similar questions is directly granted to counties, cities, towns, and townships, exercisable through their several governing bodies. In other words, the mere power to prohibit the sale of intoxicating liquors within the boundaries of the

districts or territories established or marked out by the Wyllie law is by said law given to the electors residing within such districts, and such power may or may not be exercised by them, at their own option. It follows, therefore, that, while, as declared, the act referred to constitutes a general law, in that it applies to the whole state, it does not directly, or *ipso facto*, operate to prohibit or restrict the sale by retail of such liquors in the state, nor to interfere with the right, expressly granted to them by the constitution, of local legislative boards to regulate or prohibit such sale of such liquors within the sphere of their respective jurisdictions, until the provisions of said general law have been invoked and put into practical operation by the electors themselves within such jurisdictions. Or, as this proposition is well stated by Presiding Justice Allen, of the second district court of appeal, in the case of *Giddings* v. *Board of Trustees of the City of San Buenaventura et al.*, 165 Cal. 695, [133 Pac. 479] : ''The constitution of this state gives to cities, counties, and towns the power to enforce, within their limits, all police regulations not in conflict with general laws. It is settled law that the regulation or prohibition of the traffic in alcoholic liquors is a police regulation. When the act of 1911 (the Wyllie law) was enacted, the city of San Buenaventura, through its board of trustees, possessed the power to regulate or prohibit such traffic. This Local Option Act only purports to wrest from such board of trustees the power to grant licenses after the electors shall have determined that such city shall be 'no-license territory.' It does not interfere with their power, in the event no election has been held under the act, nor where one has been held and the electors have determined not to make such city 'no-license territory.' In this latter event, the board of trustees, in the exercise of their constitutional police power, may, notwithstanding such election, enact ordinances regulating or prohibiting the traffic in such alcoholic liquors, if, in their opinion, the same is necessary for the public welfare.''

It is conceded that the provisions of the Wyllie law have never been invoked and adopted by the electors of the town of Winters, and, therefore, said town possesses, by direct grant from the constitution, plenary power to regulate or suppress, within its limits, the retail traffic in alcoholic liquors, and to adopt such measures as will effectually attain either end.

2. It is not conceived to be essential to specifically review in this opinion all of the many reasons submitted by the petitioner in support of his claim that the ordinance is unreasonable, and for that reason invalid, since it is well and, indeed, conclusively settled that there is absolutely no restriction upon the right of a state, in the exercise of its powers of police, to deal with the business of selling intoxicating liquors by retail in any manner that it deems fit or proper. In other words, a state or its agents, the municipalities thereof, may prohibit the traffic in such liquors altogether (*Mugler* v. *Kansas*, 123 U. S. 623, [31 L. Ed. 205, 8 Sup. Ct. Rep. 273]), or, permitting the traffic to be carried on, may impose such conditions upon its existence as it pleases. (*Ex parte Christensen*, 85 Cal. 208 [24 Pac. 747].)

We are not advised whether the town of Winters has another ordinance dealing with the liquor question than the one under review—that is, an ordinance directly and expressly forbidding the carrying on of the liquor traffic within its limits. We should judge, however, from the nature of the provisions of the ordinance before us, that there also exists in that town an ordinance directly prohibiting the sale of intoxicating liquors within the incorporated limits thereof. But, assuming that there is no such ordinance, and further assuming but not deciding that the ordinance involved here cannot justly be construed to go to the extent of prohibiting altogether the traffic in such liquors within the limits of said town, still the right of the governing board thereof, in the exercise of its power to regulate the traffic, to deny to traveling salesmen the privilege of soliciting or taking orders or making agreements within the limits of the town for the sale or delivery of intoxicating liquors, cannot for a moment be questioned. This is simply to repeat that the governing power of a municipality may permit the traffic to be engaged in within its limits upon such conditions or restrictions as it may see fit to impose upon it. Therefore, the privilege of carrying on the traffic may exist consistently with an inhibition, as an act of regulation, against the right of any person (other than one licensed to carry on the traffic at a fixed place of business, who might, in a sense, be said to be engaged in soliciting and taking orders and making agreements for the sale of such liquors when he dispenses them over his bar) to solicit,

take orders, or make agreements within the limits of a municipality for the sale and delivery of such liquors. On the other hand, if prohibition of the traffic within the limits of Winters has been, by some other ordinance, established, the interdictions of the present ordinance are clearly within the power of the governing board of said town as in furtherance of the general scheme to prohibit any kind or character of dealing in the traffic in alcoholic liquors, except as to licensed pharmacists solely for medicinal purposes, within the limits of said town. (See *Rose* v. *State,* 4 Ga. App. 588, [62 S. E. 117; *Delamater* v. *South Dakota,* 205 U. S. 93, [10 Ann. Cas. 733, 51 L. Ed. 724, 27 Sup. Ct. Rep. 447].)

It is further argued, however, that the ordinance is unreasonable, and its adoption therefore in excess of the legislative authority, because, by the necessary effect of its terms, no person has the right to solicit or take orders or make agreements, within the limits of the town of Winters, for the sale of intoxicating liquors to be delivered at some other place than in said town or not within the limits thereof. There can be no doubt that the ordinance has the effect thus attributed to it, but there can be no doubt that it cannot for that reason be held unreasonable or beyond the legislative cognizance of the municipality. It is true that, in a prohibition town or city, having such an ordinance as the one here, a citizen thereof may go outside such town or city and purchase and have shipped into such town or city intoxicating liquors for his exclusive family use, but, as before declared, the governing power of a municipality has the right either to suppress, or, allowing it to be carried on, to regulate the business of selling intoxicating liquors, and, either in furtherance of prohibition or. as a regulatory measure, may prevent, by ordinance, any person, other than the liquor dealer himself, if it be for regulation, from soliciting or taking orders or making agreements within its limits for the sale and delivery of such liquors, regardless of what disposition is to be made of the liquors or where they are to be delivered. It may be remarked, in passing, that in those communities where the traffic in intoxicating liquors is altogether prohibited, it could hardly be claimed that prohibition had been fully achieved therein if agencies for the sale of such liquors to be delivered

elsewhere could be established, maintained, and carried on with impunity within the limits of such communities.

But counsel for the petitioner finds serious objection to the reasonableness of the ordinance in the language thereof, "or liquor of any kind whatever," which follows the words, "for the sale and delivery of any intoxicating liquors," and argues that a person taking orders or making agreements for the sale of nonintoxicating liquors may thus be brought within the penalties of the measure. We are unable to say why that language was used in the ordinance, since the language preceding it, "any *intoxicating liquors,*" is very comprehensive and embraces all the kinds of liquors as to which there is any occasion or legal justification for such legislation as that which is involved in the ordinance in question. It is, of course, true that the sale of liquors not alcoholic or not of an intoxicating character cannot be prohibited or interfered with by the government any more than can the sale of any other harmless or necessary commodity or article of consumption, and it is, therefore, not to be presumed, that the board of trustees of Winters intended, by the use of the criticised language of the ordinance, to interfere with the sale of such articles. To construe the language referred to by the light of the rule of construction, *ejusdem generis,* would, in view of the singularly comprehensive language immediately preceding it and with which it is, grammatically, directly connected, lead to mere tautology. So, from whatever angle the language animadverted upon may be viewed, it is difficult to determine what purpose it was intended to subserve. But, conceding that, whatever might have been the object in using said language, it can have no other signification than that which counsel for the petitioner ascribes to it, it is very clear that it may be altogether disregarded and rejected without invalidating or impairing the force of the provisions of the ordinance which apply to intoxicating liquors; "for nothing is better settled than if the part of a law or ordinance which is invalid is distinctly separable from the remainder, the latter can stand and the former be rejected." (*Ex parte Christensen,* 85 Cal. 208, [24 Pac. 747]; *Ex parte Mitchell,* 19 Cal. App. 567, [126 Pac. 856].)

Although suggesting the proposition at the oral argument, counsel for the petitioner, in his briefs, disclaims the conten-

tion that the ordinance in question contravenes the interstate commerce clause of the federal constitution, but insists that, irrespective of any consideration of said clause of said constitution, the essential effect of the provisions of the ordinance is to operate "in restraint of trade," whereby the measure is rendered absolutely void. Further consideration of the proposition involving the effect of the commerce clause of the federal constitution upon a local measure regulating or suppressing the sale of intoxicating liquors within the limits of local communities might, therefore, be dispensed with, so far as this case is concerned. It may be well here to observe, however, that, by a law of Congress, known as the "Wilson Act," 26 Stats. at Large 313, chap. 728, [3 Fed. Stats. Ann. p. 853, U. S. Comp. Stats. 1901, p. 3177], the liquor traffic was expressly eliminated as one of the subjects of interstate commerce, and is, therefore, not within the protection of that clause of the federal constitution, and that, in construing that provision of said act, the state courts of those jurisdictions where the question has been raised and the supreme court of the United States have held that said provision means, as its language will be found, upon examination, to plainly imply, that a state may, in the exercise of its police powers, and without offending the commerce clause of the federal constitution, regulate or control the traffic in intoxicating liquors, within its own borders, to the extent either of regulating or altogether preventing the business of soliciting proposals in such state for the purchase of such liquors, which proposals are to be consummated outside of the state, and the liquors to which such proposals relate are also situated outside the state. (*Delamater* v. *South Dakota,* 205 U. S. 93, [10 Ann. Cas. 733, 51 L. Ed. 724, 27 Sup. Ct. Rep. 447].)

Moreover, if the proposition were insisted upon here, another reply which could be made thereto, in its application to the case of the petitioner, is that there has been no showing made in this proceeding that he was engaged in the business of soliciting or taking orders or making agreements with respect to intoxicating liquors situated outside the borders of this state, and, in the absence of such a showing, it could not be held that the act for which he was prosecuted would come within the interdiction of the commerce clause of the federal constitution, even if the Wilson law had not expressly

exempted the intoxicating liquor business from the operation of said clause.

The claim that the ordinance is in restraint of trade is wholly without a meritorious foundation, as in effect has already been declared in this opinion in disposing of other specific objections to it. It has been uniformly declared that, in a legal sense, the traffic in intoxicating liquors is a nuisance *per se,* and that, consequently, the right to engage in it inheres in no person. (See *Mugler* v. *Kansas,* 123 U. S. 623, [31 Sup. Ct. Rep. 205; 8 Sup. Ct. Rep. 273] ; *Ex parte Christensen,* 85 Cal. 208, [24 Pac. 747], for the statement of this doctrine.) It follows, therefore, that it is clearly within the police powers of the state or a municipality, to which such powers are duly delegated, to do anything in the legislative treatment of that business or all questions appertaining thereto which its discretion may suggest. The traffic in the business, as before stated, may be entirely suppressed or it may be allowed to exist upon certain specified conditions. The privilege of engaging in it may arbitrarily be granted to one person and denied to another. In a word, the governing power is not, as before declared, restricted in the slightest degree in its right to do any act respecting the traffic which, in its opinion, is necessary to the welfare of the community over which such power is territorily exercisable. Therefore, whatever may be the nature of any measures taken by such governing power to regulate, limit, or suppress the traffic cannot be held to be in restraint of trade.

The ordinance in question not having been shown to be invalid or the conviction of the petitioner thereunder illegal, it is ordered that the writ herein issued be discharged and the prisoner remanded.

Chipman, P. J., and Burnett, J., concurred.