[Crim. No. 1163. Second Appellate District, Division Two.—March 4, 1925.]

In the Matter of the Application of D. S. SIMMONS for a Writ of Habeas Corpus.

[1] CRIMINAL LAW—INTOXICATING LIQUORS—PROHIBITORY LEGISLATION —LEGISLATIVE SCOPE.—In order to make enforcement of the prohibition of the traffic in intoxicants effective, the legislature, as a matter of legislative expediency, may prohibit traffic in beverages which are near to intoxicants, even though they are not in themselves intoxicating; and when this twilight zone of expediency is invaded by the legislature, it does so only for the purpose of facilitating the enforcement of its prohibitory legislation.

[2] ID.—SCOPE OF WRIGHT ACT—OCCUPANCY OF WHOLE DOMAIN.—The legislature of this state, in adopting the Wright Act, which was intended to enforce the eighteenth amendment of the federal constitution, has occupied the whole domain of prohibitory legislation, i. e., prohibitory legislation in the sense that it is sought to prohibit traffic in all alcoholic beverages which are actually intoxicating.

[3] ID.—PARTIALLY VACANT FIELD — MUNICIPAL LEGISLATION — INVASION OF OCCUPIED ZONE.—If the legislature, in adopting such prohibitory legislation, had not manifested an intention to prohibit traffic in all alcoholic beverages which are in fact intoxicating, a partially vacant field of legislation would have been left for a city to fill by appropriate legislation; but the state enactment having clearly evidenced an intention to prohibit *in toto* the evil which is to be suppressed, a city ordinance which is designed simply to invade a zone which can be occupied only for the purpose of facilitating the enforcement of the total actual prohibition already in existence is not in keeping with the spirit or policy of the state law, but is in conflict therewith.

[4] ID.—EXCESSIVE PENALTIES—VOID MUNICIPAL LEGISLATION.—A municipal liquor ordinance which prescribes penalties in excess of those prescribed by the Wright Act is unreasonable and invalid.

[5] ID. — MUNICIPAL LIQUOR ORDINANCE — CONFLICT WITH GENERAL LAWS—UNREASONABLE LEGISLATION.—A municipal liquor ordinance which prescribes as intoxicating any alcoholic beverage containing more than "one-third" of one per cent of alcohol by volume and which provides that the offender, even though it be his

3. See 14 Cal. Jur. 728.

first offense, shall be punished by a fine of not less than $250 nor more than $500, or by imprisonment not exceeding one hundred and eighty days, or by both such fine and imprisonment, is not in harmony with the general laws of the state, and is unreasonable and void.

[6] ID.—SUFFICIENCY OF COMPLAINT—STATEMENT OF OFFENSE UNDER STATE LAW—HABEAS CORPUS.—A complaint, although intended to charge an offense under a void municipal liquor ordinance, and which charges the defendant with unlawfully having in his possession "intoxicating liquor containing more than one-third of one per cent alcohol by volume," does in fact state an offense under the state law; and a judgment of conviction upon such complaint is not vulnerable to a collateral attack in a *habeas corpus* proceeding.

(1) 33 C. J., p. 498, n. 11 New, p. 520, n. 87. (2) 33 C. J., p. 526, n. 40 New. (3) 33 C. J., p. 526, n. 40 New. (4) 33 C. J., p. 528, n. 53. (5) 33 C. J., p. 528, n. 53. (6) 29 C. J., p. 19, n. 41, p. 41, n. 31 New; 31 C. J., p. 745, n. 96, 98.

PROCEEDING in Habeas Corpus to secure the release of petitioner from custody after conviction of violation of a municipal liquor ordinance. Writ discharged and petitioner remanded.

The facts are stated in the opinion of the court.

Dorsey & Campbell for Petitioner.

Brittan & Brittan for Respondents.

FINLAYSON, P. J.—A complaint was filed in the police court of Bakersfield charging petitioner with the possession of intoxicating liquor containing more than one-third of one per cent of alcohol by volume, contrary to the provisions of section 4 of Ordinance No. 165 of that city. Petitioner pleaded guilty to the charge and was sentenced to pay a fine of $250. The judgment provides that if the fine be not paid petitioner shall be imprisoned in the county jail of Kern County until it be satisfied, in the proportion of one day's imprisonment for every dollar of the fine. The fine not having been paid, petitioner was committed to jail pursuant to the terms of the judgment; whereupon he applied to this court for his discharge on *habeas corpus*. The principal points urged by petitioner are: (1) That the ordi-

nance is unconstitutional, and (2) that the complaint does not state any offense known to the law.

Section 4 of the Ordinance reads: "It shall be unlawful for any person to have, keep or store any intoxicating liquor in any public place in said city except as provided herein." Section 1 defines intoxicating liquor as including "any distilled, malt, spirituous, vinous, fermented or alcoholic liquor which contains more than one-third of one per cent, by volume of alcohol, and all alcoholic liquids and compounds whether proprietary, patented or not, which are potable or capable of being used as a beverage, and which contain more than one-third of one per cent, by volume of alcohol." It is provided in section 13 that any person who shall violate any of the provisions of the ordinance "shall be guilty of a misdemeanor, and on conviction thereof shall be punished by a fine of not less than two hundred and fifty ($250.00) dollars, nor more that five hundred ($500.00) dollars, or by imprisonment in the county jail for a period not to exceed one hundred and eighty (180) days, or by both such fine and imprisonment."

The municipality derives its police powers from section 11 of article XI of the constitution, which declares that any city may make and enforce within its limits all such local, police, sanitary, and other regulations "as are not in conflict with general laws." Petitioner claims that the ordinance is in conflict with a general law of this state, namely, the Wright Act (Stats. 1921, p. 79), within the rule announced in such cases as *Ex parte Sic*, 73 Cal. 142 [14 Pac. 405], *Ex parte Stephen*, 114 Cal. 278 [46 Pac. 86], *Ex parte Daniels*, 183 Cal. 636 [21 A. L. R. 1172, 192 Pac. 442], and *In re Mingo*, 190 Cal. 769 [214 Pac. 850]—cases which hold that a local ordinance punishing exactly the same act denounced by a state law is in conflict therewith and to that extent void. It also is claimed that the ordinance is unreasonable and void under the doctrine of such cases as *In re Ah You*, 88 Cal. 99 [22 Am. St. Rep. 280, 11 L. R. A. 408, 25 Pac. 974], and *Ex parte Solomon*, 91 Cal. 440 [25 Pac. 757]. It is contended by the sheriff, on the other hand, that the ordinance is not in conflict with the Wright Act, and that it is not unreasonable. That officer claims that because the ordinance makes one-third of one per cent of alcohol by volume the test of an intoxicating liquor it is

not in conflict with the state law. In support of this contention he cites *In re Hoffman,* 155 Cal. 114 [132 Am. St. Rep. 75, 99 Pac. 517], and *Mann* v. *Scott,* 180 Cal. 550 [182 Pac. 281]—cases which recognize the principle that there is no conflict between an ordinance and a general law where the former makes new and additional regulations for the sale of an article of commerce which are in keeping with the provisions of the general law and are at the same time appropriate to the necessities of the particular locality.

In *Olivieri* v. *Police Court,* 62 Cal. App. 91 [216 Pac. 44], the court, construing a similar ordinance of the city of Bakersfield, assumed, and we think correctly assumed, that the inhibition of the ordinance against having, keeping or storing intoxicating liquor is substantially the same as the inhibition of the Wright Act against the possession of intoxicating liquor. The fact that the ordinance declares it to be unlawful to have, keep, or store the intoxicating liquor in "any public place, does not cause it to cover ground not covered by the state law. The prohibition of state law is aimed against the illegal possession of intoxicating liquors in all places—public as well as private. The principal difference between the present ordinance and the one which was held to be unconstitutional in the Olivieri case is that here the city, in its definition of intoxicating liquor, has made an alcoholic content of one-third of one per cent by volume the test, whereas the ordinance under consideration in the Olivieri case, adopting the criterion furnished by the state law, made one-half of one per cent of alcohol by volume the test of an intoxicating liquor. The city attorney naively informs us that it was for the purpose of avoiding the nullifying effect of the decision in the Olivieri case that the city council, in passing the present ordinance, made the test of intoxicating liquor the presence of one-third of one per cent of alcohol by volume, instead of one-half of one per cent, as formerly.

Does the part of the ordinance under which petitioner was charged conflict with the Wright Act? Broadly speaking, the question whether such conflict exists depends upon whether the state has occupied the whole field of prohibitory legislation with respect to the possession of intoxicating liquor for use as a beverage. There are two distinct domains of prohibitory legislation which the lawmakers, in

their wisdom, may see fit to invade by appropriate legislation. One of these realms embraces all laws which seek directly to prohibit traffic in the evil sought to be suppressed. This realm includes those prohibitory laws which are aimed directly at the mischief intended to be eradicated. It is invaded by any enactment which is designed to prohibit an act that is intrinsically evil, such, for example, as an enactment which makes it unlawful to traffic in liquors which are in fact intoxicating. But there is another realm of prohibitory legislation which may be described as the zone of expediency. It includes those laws which prohibit acts that are not in themselves of an evil nature, but whose prohibition is deemed essential in order to facilitate the suppression of the actual evil. For example, experience has shown that it is well-nigh impossible effectively to enforce laws prohibiting traffic in intoxicants if liability or inclusion within the prohibition is made to depend upon the issuable fact whether or not a particular liquor is or is not intoxicating. [1]. Therefore, in order to make enforcement of the prohibition effective the legislature may prohibit traffic in beverages which are near to intoxicants, even though they are not in themselves intoxicating. Whether it will do so or not is a matter of legislative expediency. When this twilight zone of expediency is invaded by the legislature it does so only for the purpose of facilitating the enforcement of its prohibitory legislation. (*State* v. *Brothers*, 144 Minn. 337 [175 N. W. 685]; *State* v. *Walder*, 83 Ohio St. 68 [93 N. E. 531]; *Purity Extract etc. Co.* v. *Lynch*, 226 U. S. 192 [57 L. Ed. 184, 33 Sup. Ct. Rep. 44, see, also, Rose's U. S. Notes]; *Ruppert* v. *Caffey*, 251 U. S. 264 [64 L. Ed. 260, 40 Sup. Ct. Rep. 141, see, also, Rose's U. S. Notes Supp.]; *In re Hixson*, 61 Cal. App. 200, 205 [214 Pac. 677]; *State* v. *Gauthier*, 121 Me. 522 [26 A. L. R. 652, 118 Atl. 380].)

[2] An analysis of the Wright Act and of the eighteenth amendment, which the act is intended to enforce, will, we think, lead to the conclusion that the state law was intended to occupy the whole field of actual prohibitory legislation, i. e., that it was intended to occupy all of that domain of prohibitory legislation which embraces such laws as are intended to suppress the evil itself. That is to say, though we probably cannot take judicial notice that a beverage containing less than one-half of one per cent of alcohol by vol-

ume is not intoxicating, we think it can plainly be seen that it was the intention of the state lawmakers in passing the Wright Act to prohibit the possession of any alcoholic beverage which is in fact intoxicating. The eighteenth amendment declares that traffic in "intoxicating liquors . . . for beverage purposes is hereby prohibited." This language is unquestionably broad enough to embrace within its prohibition any liquor which, when used as a beverage, can and does actually produce intoxication if imbibed in such quantities as it is practically possible for a man to drink. The Volstead Act (U. S. Comp. Stats., Ann. Supp. 1923, sec. 10138¼), the penal provisions whereof are adopted by our Wright Act, declares in its title that it is an act "to prohibit intoxicating beverages"; and in section 3 of title II (sec. 10138½aa) it declares that its provisions shall be liberally construed "to the end that the use of intoxicating liquor as a beverage shall be prevented." Here is manifestly an unmistakable intention on the part of Congress adequately to enforce the eighteenth amendment by completely prohibiting traffic in any and all beverages which, by reason of the presence of alcohol, are in fact intoxicating. This it does by defining intoxicating liquor as including certain specified liquors, such as brandy, whisky, gin, beer, ale, wine, etc., and in addition thereto "any spirituous, vinous, malt or fermented liquor, liquids and compounds, whether medicated, proprietary, patented or not, or by whatever name called, containing one-half of one per cent or more of alcohol by volume, which are fit for use for beverage purposes." In the enactment of the Wright Act the legislature of this state has exhibited a similar intention to prohibit traffic in all alcoholic beverages which are in fact intoxicating. This it does by adopting all of the penal provisions of the Volstead Act and by expressly recognizing the requirement of the eighteenth amendment for its concurrent enforcement by Congress and by the several states.

Congress or the state legislature could, of course, have defined an intoxicating liquor as a beverage containing any percentage of alcohol whatever. Both the national and the state law-making bodies have seen fit to declare that any beverage containing as much as one-half of one per cent of alcohol shall be deemed to be an intoxicating liquor. In this legislation, designed as it is to enforce the absolute

prohibition of the eighteenth amendment, we can plainly discern an unmistakable intention to prohibit traffic in any and all alcoholic beverages which are in fact intoxicating. We therefore feel warranted in concluding that the legislature of this state has occupied the whole domain of actual prohibitory legislation, i. e., prohibitory legislation in the sense that it is sought thereby to prohibit traffic in all alcoholic beverages which are actually intoxicating.

[3] It is of course conceded by us that if the legislature had not manifested an intention to prohibit traffic in all alcoholic beverages which are in fact intoxicating, a partially vacant field of legislation would have been left for the city to fill by appropriate local legislation, as was the case in *Ex parte Hoffman, supra*. But where, as here, the state legislation discloses an unmistakable intention completely to prohibit the evil thing itself, we seriously doubt whether a municipality may adopt a prohibitory ordinance merely for the purpose of securing additional effectiveness for the plenary prohibition which is already in force under the state law. Where the language of the state enactment clearly evidences an intention to prohibit *in toto* the evil which is to be suppressed, the determination of how much of what we have referred to as the zone of expediency should be occupied by further legislation would seem to be a matter of state policy to be determined by the state legislature, and that a city ordinance which is designed simply to invade a zone which can be occupied only for the purpose of facilitating the enforcement of the total actual prohibition already in existence is not in keeping with the spirit or policy of the state law, but is in conflict therewith.

[4] But if there be room to doubt whether a conflict exists between the ordinance and the state law within the meaning of section 11 of article XI of the constitution, there can be no room to doubt the unreasonableness of the ordinance, within the principle of such cases as *In re Ah You* and *Ex parte Solomon, supra,* both of which hold that the punishment prescribed by an ordinance for its violation must not only be reasonable in itself but must be in harmony with the state legislative enactments on kindred subjects. "Municipal by-laws must harmonize with the general laws of the state, with the municipal charter and with the principles of the common law. (14 Barb. 478; 4 Hill, 209.)

They must also be reasonable, and whenever they appear not to be, the courts will, as matter of law, declare them void." (*Ex parte Kearny*, 55 Cal. 225. See, also, *South Pasadena* v. *Terminal Ry. Co.*, 109 Cal. 321 [41 Pac. 1093].) In *Ex parte Ah You, supra*, it is said that "it was incumbent upon the city to frame the ordinance, so far as practicable, in harmony with the general laws of the state." In that case an ordinance was held unreasonable and invalid because it authorized a fine of $1,000 for an offense, when the statute of the state limited the punishment of a grosser offense in the same category to a fine of $500. In *Ex parte Solomon, supra*, it was held that an ordinance prescribing a minimum fine of $250 and a minimum imprisonment of three months for having lottery tickets in one's possession, when under the general law of the state such misdemeanors as conducting the drawing of a lottery, selling lottery tickets, etc., were punishable by fine not exceeding $500 or imprisonment not exceeding six months, without any prescribed minimum, providing, as it did, a greater penalty than that provided by statute for kindred offenses, was not in harmony with the general laws of the state and was therefore unreasonable and void.

[5] In the Wright Act the legislation has prohibited everything which is sought to be prohibited by section 4 of this ordinance, exceeding only the possession of liquor of an alcoholic content between one-third of one per cent and one-half of one per cent by volume. The ordinance provides that for having, keeping, or storing in a public place in the city of Bakersfield any alcoholic beverage containing more than one-third of one per cent of alcohol by volume the offender, even though it be his first offense, shall be punished by a fine of not less than $250 nor more than $500, or by imprisonment not exceeding 180 days, or by both such fine and imprisonment; whereas the state law, for the illegal possession of intoxicating liquor containing one-half of one per cent or more of alcohol by volume, authorizes for the first offense a fine of not more than $500. It is possible that upon a conviction for a first offense under the state law the court, in the exercise of a wise discretion, may impose only a nominal fine, even though the accused may have had such possession in a public place; whereas for the comparatively trifling offense of having in one's

possession in the same place a beverage containing less than one-half of one per cent but more than one-third of one per cent of alcohol by volume the discretion to impose a fine of less than $250 is taken away from the court by this ordinance. Moreover, under the ordinance the court, even for a first offense, may impose imprisonment for a term which may be twice as long as that which the state law authorizes for second offenders. In other words, the state law, which is aimed at the prohibition of traffic in all alcoholic liquors which actually intoxicate, imposes a penalty far less than that imposed by the ordinance for the trifling offense of doing something which the city authorities may deem it necessary to prohibit in order to facilitate the effective prohibition of traffic in actual intoxicants. Such an ordinance is not in harmony with the general laws of the state, and is unreasonable and void within the rule announced in *Ex parte Ah You* and *Ex parte Solomon*, *supra*.

[6] Notwithstanding the invalidity of the ordinance petitioner will not be entitled to his discharge if the complaint, though purporting to state an offense under the ordinance, does in fact state an offense under the state law. (*Olivieri* v. *Police Court, supra; In re Murphy*, 190 Cal. 286 [212 Pac. 30].) The complaint charges petitioner with unlawfully having in his possession "intoxicating liquor containing more than one-third of one per cent alcohol by volume." It is claimed that the pleading states no offense known to the law because it fails to allege that the liquor contained one-half of one per cent or more of alcohol by volume, or that it was fit for use for beverage purposes. There is nothing in the complaint which tends to negative the idea that the liquor in petitioner's possession contained at least as much as one-half of one per cent of alcohol. The allegation that it contained "more than one-third of one per cent alcohol by volume" is entirely consistent with the fact that its alcoholic content was as much as or more than one-half of one per cent. In other words, the allegation that the liquor contained "more than one-third of one per cent alcohol by volume" neither adds to nor detracts from the pleading as a complaint under the state law, and those words of the pleading may be ignored as surplusage.

With the elimination of these surplus words the charge in the complaint is that petitioner unlawfully had in his possession "intoxicating liquor." We have recently held that a complaint in which the liquor is described simply as "intoxicating liquor" is not so fatally defective as to warrant a reversal of a judgment of conviction on an appeal therefrom. (*People* v. *Norcross, ante,* p. 2 [234 Pac. 438].) *A fortiori* must it be held that a judgment of conviction upon such a complaint is not vulnerable to a collateral attack in a *habeas corpus* proceeding. The writ of *habeas corpus* may not be made to serve the purpose of a writ of error. It has been said that if the facts alleged "squint at a substantive statement of the offense" *habeas corpus* will not lie. (*Ex parte Williams,* 121 Cal. 328 [53 Pac. 706]. See, also, *In re Avdalas,* 10 Cal. App. 507 [102 Pac. 674].) A complaint similar to the one here under consideration was before the court in the *Matter of Hayward,* 62 Cal. App. 177 [216 Pac. 414], and was held to be sufficient to withstand an attack in a *habeas corpus* proceeding. Shortly after the decision of the district court of appeal in that case a similar petition for the writ of *habeas corpus* was presented to the supreme court by the same petition. (*In re Hayward,* Crim. No. 2578.) That court, on May 28, 1923, without filing an opinion, denied the petition. That decision would seem to conclude all question as to the ability of this complaint to withstand collateral attack in a *habeas corpus* proceeding.

The most that can be said in criticism of the complaint is that it is not sufficiently specific, and that its allegation that the liquor was intoxicating is the mere statement of a conclusion. But it certainly attempts to charge an offense; it at least "squints" at the statement of an offense—to employ the language of *Ex parte Williams, supra.* We have no hesitancy in saying that it does not wholly fail to state a public offense, and that any defect therein might have been remedied by demurrer or by motion in arrest of judgment.

The writ is discharged and petitioner is remanded.

Works, J., concurred.

CRAIG, J., Concurring.—I concur, except in that part of the opinion having to do with petitioner's claim that the ordinance of the city of Bakersfield is in conflict with the general laws. Concerning that point I prefer to express no opinion.